IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| Lisa Lane, | ) | CASE NO.: 9:23-cv-05803-DCN-MHC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| | ) | **(Jury Trial Demanded)** |
| Lowe's Home Centers, LLC | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

COMES NOW PLAINTIFF Lisa Lane (hereinafter, "Plaintiff" or "Lane"), by and through undersigned counsel, complaining of Lowe's Home Centers, LLC (hereinafter "Defendant", "Lowe's" or "Employer"), and allege and show unto this Honorable Court as follows:

## NATURE OF THE ACTION

## PARTIES

1.    Plaintiff is a citizen and resident of Beaufort County, South Carolina.

2.    Lowe's Home Centers, LLC is a limited liability company organized and existing pursuant to the laws of North Carolina with its principal place of business in the state of North Carolina. Lowe's Home Centers, LLC, and regularly transacts business in the State of South Carolina, including at Store 1533, 35 Malphrus Rd., Bluffton, SC and derives substantial revenue from these activities.

3.      Lowe's and its related businesses operate or service more than 2,200 home improvement and hardware stores in the USA and employs over 300,000 associates.

## JURISDICTION AND VENUE

4.      Plaintiff hereby repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

5.      Plaintiff's claims include those arising under Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000 *et seq.*, and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.* Jurisdiction of this Court arises under 28 U.S.C. §1331.

6.      At all times relevant to the allegations of this Complaint, Defendant operated  multiple facilities in the State of South Carolina, including in Bluffton, SC.

8.      At all times relevant, Defendant employed fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year in the State of South Carolina.

9.      At all times relevant Defendant employed 50 or more employees in 20 or more workweeks in the current or proceeding calendar year.

10.     At all times relevant Plaintiff had worked for the Defendant for at least a year, during which she worked at least 1,250 hours.

11.     The  acts and omissions giving rise to this Complaint took place in Beaufort County, South Carolina.

12.     This Honorable Court has jurisdiction over the subject matter hereof and parties hereto, and venue is proper in this forum.

## PROCEDURAL PREREQUISITES

13.    Plaintiff hereby repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

14.    Plaintiff has exhausted all federal and state administrative remedies.

15.    Plaintiff's charge of discrimination was dual filed on or about May 23, 2022 with the

       SCHAC and EEOC.

16.    On August 24, 2023, the EEOC issued a Right-to-Sue letter at Plaintiff's request, the

       matter having been before the EEOC for in excess of 180 days.

17.    This suit is timely filed within ninety (90) days of said notice.

## FACTUAL ALLEGATIONS

18.    Plaintiff hereby repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

19.    Plaintiff began working for Defendant in April 2014 at Store 1533 in Bluffton,  South Carolina.

20.    As part of the Defendant's employment Defendant Lowe's guaranteed to Plaintiff that:

       a.    Defendant was an Equal Opportunity Employer;

       b.    Defendant published and maintained promissory policies and procedures that provide equal employment opportunities to all employees and applicants without regard to race, color, religion, sex, gender, genetic information, national origin, age, veteran status, disability, or any other status protected by federal or state law; and

       c.    Defendant's decisions regarding recruitment, selection, hiring, promotion, compensation, and benefits will be administered without regard to race, color, sex, creed, religion, age, national origin, physical disability, political affiliation, and in compliance with all applicable state and federal statutes and regulations.

21.     In consideration of Defendant's representation, policies and procedures, Plaintiff accepted a position as a Department Supervisor with Defendant, and was hired on April 18, 2014 at $22.00 per hour, or approximately $46,000.00 annually.

22.     Plaintiff worked at Store Location 626 in Sumter, SC.

23.     Plaintiff and Defendant formed a contractual employment relationship in that Plaintiff worked in exchange to wages and benefits.

24.     Plaintiff received promotions while at Lowe's and positive reviews, and was considered an exemplary employee who capably performed within her position.

25.     Plaintiff was an extremely dedicated employee for Lowe's often working over 50 hours a week, including weekends, holiday, mornings and evenings.

26.     In May 2020, Plaintiff moved to Beaufort, SC and travelled to the Bluffton, SC Lowe's store for work as a Department Supervisor for Internet.

27.     Plaintiff was promoted to Merchandise Assistant Store Manager (also known as Merchandise ASM) at a salary of $62,000.00.

28.     She then made a lateral move to Specialty Assistant Store Manager (also known as Specialty ASM), in December 2020.

29.     At her performance review, in early 2021, Plaintiff was awarded a 5% increase, the maximum available, increasing her salary to $65,000 annually.

30.     Plaintiff, as an ASM, routinely worked an 11 hour shift.

31.     Per policy, ASM's at Lowe's are to receive formal training for the ASM role. Newly promoted ASM's are to spend at least 2 weeks at a training store location where they can shadow a tenured ASM. If an ASM is laterally moved to a supporting area of the store they were to be mentored at another store location for 1-2 weeks.

32.     Plaintiff did not receive this kind of training and was left to learn on her own by asking for assistance from other ASMs. Male ASM Christoper Thomas, with whom Plaintiff worked, did receive the required training. At least one other male ASM James Williams (aka Robert Williams) was sent on two occasions for training once for training as a Lumber ASM and once for training as Outside/Inside Lawn and garden ASM.

33.     Even without training, Plaintiff was never placed on any disciplinary action, required to retrain or warned about poor job performance.

34.      August 28, 2021, Plaintiff learned she was pregnant with her second child, with a delivery date of January 14, 2022.

35.     Plaintiff informed her store manager Patricia Montesano of the pregnancy August 28, 2021 and discussed anticipated leave and benefits available under Lowe's policies.

36.     Lowe's preapproved Plaintiff's use of two weeks of accrued vacation, through Plaintiff's store manager Ms. Montesano, for use beginning January 1, 2022.

37.     Under Lowe's FMLA and Benefit policies for the birth of a child, Plaintiff was entitled to 12 weeks of paid leave, for maternity and bonding, which Plaintiff planned to use after the birth of her child in January 2022.

38.     This was Plaintiff's second pregnancy while working at Lowe's, so Plaintiff was aware of the benefits available and the notice requirements to receive these benefits.

39.    In **October 2021**, after giving notice of her pregnancy and need for leave, Plaintiff purchased a Specialty Order Sales (SOS)  return item (a dishwasher) **that had been returned on April 18, 2020**.

40.    The dishwasher was purchased as one of the store's Non-productive Inventory (NPI) items.. The original cost of the Special Order dishwasher was $1,652.00. The price was reduced to $165.00 when the returned item became NPI.

41.     If an item remains in the NPI for a year the item can continue to be reduced in price or thrown away.

42.    **This dishwasher was in NPI for 18 months**.

43.     The markdown procedure precedent required that when an item is on the NPI listing it should be marked down every week until the item is purchased on destroyed.

44.    Plaintiff was never made aware of an official policy regarding maximum markdown of an NPI item. Her manager, Ms. Montesano, was also not aware of a policy.

45.    Plaintiff purchased the dishwasher for $62.49, which price and purchase was approved by management at Lisa's store. The item was marked down by front end supervisor Ms. Melton. Ms. Melton had reduced prices on other items for employee sale without impunity.

46.    Similar sales were approved for other sales persons when merchandise was placed on the NPI listing and was going to be thrown away or needed to be marked down for quick disposal.

47.    Plaintiff saw ASM's Melissa Hanna, John Dorworsky and Tyler Kirby drastically reduce items on the NPI listing to dispose of them. For example, deeply discounted windows and a Dyson vacuum for $20.00. Even District Manager Joe Justice was known to send emails regarding "WEX" Appliances and NPI that needed to be marked down and sold.

48.     Plaintiff was with Lowe's for 7 years and had no previous training or write ups on price reduction other than what she picked up on the job.

49.     While entering her third trimester, on November 2, 2021, Plaintiff experienced COVID symptoms and tested positive for COVID-19 on November 5, 2021.

50.     As required by Lowe's policy, while she was out with COVID-19, Plaintiff kept in constant contact with her store manager Patricia Montesano regarding her medical condition and store issues.

51.     Plaintiff sought medical treatment for severe symptoms on November 8, 2021 and was transported by EMS from her doctor's office to Beaufort Memorial Hospital and then to Medical University of South Carolina (MUSC), where she was diagnosed with both COVID-19 and pneumonia. Plaintiff remained in the MUSC Intensive Care Unit for 8 days.

52.     Plaintiff was released Friday November 18, 2021 and returned to work Monday November 22, 2021 fulltime, using a portable oxygen machine for breathing. She was also allowed by her manager Montesano to use a motorized cart, to assist with mobility.

53.     Plaintiff's return to work involved returning to 11 hour shifts. She worked more than 12 hours on November 24, 2021 which was the day before Thanksgiving, working until midnight. She also worked black Friday.

54.     In total Plaintiff missed approximately 15 days of work due to COVID and Pneumonia.

55.     Plaintiff's contraction of COVID was during Defendant's busy holiday season.

56.     Employees are discouraged from calling out, taking vacation, sick, maternity, or bonding leave during this time of year.

57.     Monday, November 22, 2021 Lisa informed her store manager that she was required to have weekly doctor's appointments with her OB/GYN to ensure that her unborn baby was still

active and alive. This was made necessary due to medical concerns with post COVID-19 recovery, potentially causing complications or child mortality.

58.     Plaintiff informed Manager Montesano about the medical concerns regarding fetal mortality connected with COVID-19, and that there was a possibility she would need to take her FMLA Maternity and Bonding leave before the anticipated January 14, 2022 date.

59.     Plaintiff was in physical distress at work, having difficulty standing, breathing and walking both due to COVID and her advanced pregnancy. She contemplated taking her leave early, but did not want to burden Lowe's during the busy season. Plaintiff was also aware that she might be penalized for taking additional time off.

60.     On November 25, 2021 Plaintiff was told to request formal accommodation by Bluffton Store Manager Montesano. Plaintiff contacted the third party administrator, Sedgewick, who approved of her bringing oxygen to work. However, Sedgewick informed Plaintiff she could not use a motorized cart as accommodation at work, citing the need for customers to use them. Sedgewick allowed she would be permitted to purchase and bring her own cart. No other accommodation was offered. Sedgewick did not ask for additional information or medical records related to her condition or limitations.

61.     Store Manager Montesano granted the request to use a store motorized cart at work, despite Sedgewick's denial. Ms. Montesano had also used a motorized cart following a procedure and she had allowed this accommodation for other workers on occasion.

62.     On December 1, 2021 Lisa Lane was called into a meeting with Asset Protection employee Mike Mullaney and aggressively interrogated regarding her purchase of the NPI dishwasher several months before.

63.     Plaintiff was then placed on suspension, told to return her keys and other employer items, and eventually terminated on December 8, 2021, allegedly for failing to get proper approval to purchase the dishwasher.

64.     Other similarly situated employees, who were not pregnant and not suffering from temporary or similar disabilities, such as RTM clerk Megan Hensley, had purchased deeply discounted items, and were not terminated.

65.     Other ASMs similar to Plaintiff, who engaged in more serious alleged violations, such as Christopher Thomas who disregarded Lowe's policy with regard to hazardous materials, were given disciplinary notices, counseling and retraining when involved in alleged infractions of a similar nature.

**FOR A FIRST CAUSE OF ACTION**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT  (42 U.S.C. §§ 12101 et seq) AND THE SOUTH CAROLINA HUMAN AFFAIRS ACT and the SOUTH CAROLINA PREGNANCY ACCOMMODATIONS ACT**

66.     Plaintiff realleges every allegation contained in the preceding paragraphs as if fully set forth herein.

67.     Lowe's is an employer subject to the requirements and prohibitions set forth in the Americans with Disabilities Act and the ADA Amendments Act of 2008, 42 U.S.C. §§ 12101 et seq (collectively, the ADA), the South Carolina Human Affairs Act and the South Carolina Pregnancy Accommodations Act.

68.     Lowe's knew of the Plaintiff's disability and that she was a QID.

69.     Lowe's regarded the Plaintiff as having an impairment within the meaning of 42 U.S.C. § 12102(1)(C). the South Carolina Human Affairs Act and South Carolina Pregnancy Accommodations Act.

70.     Plaintiff was qualified for her position, and could do the essential functions of her job with accommodation.

71.     Plaintiff notified Defendant of her need for FMLA and maternity leave before she contracted COVID in August 2021.

66.     Plaintiff contracted in November 2021, and was hospitalized due to COVID and then was recovering from COVID-19, which also impacted her pregnancy. This resulted in breathing and mobility issues, both conditions recognized as qualifying disabilities under the ADA and SCHAA.

67.     Plaintiff requested reasonable accommodations available under the Acts and advised Lowe's that she may need additional leave due to the impact of COVID on her pregnancy.

68.     Plaintiff's requested reasonable accommodations, which were not an undue hardship, and would allow Plaintiff to continue to perform the essential functions of her job.

69.     Defendant failed to engage in the interactive process in meaningful way.

70.     Defendant treated Plaintiff significantly different than similarly situated co-workers including by impeding her ability to obtain accommodation, disciplining and terminating her more harshly for similar offenses after she notified Defendant of her need for accommodation and potentially for additional or earlier leave.

71.     When Plaintiff mentioned the potential of early leave due to her condition, Defendant subjected her to a hostile and discriminatory environment, and fired her for allegedly "stealing" a dishwasher.

72.     Plaintiff was interviewed by Defendant regarding her alleged violation of policy she was not aware of (nor was her manager) or trained upon during her tenure as an employee and assistant manager at Lowe's.

73.     At the time of the interview Plaintiff was in her last trimester and still suffering from the effects of COVID, and yet she was isolated from her oxygen support, yelled at, reduced to tears and compelled to provide a statement dictated by Defendant.

74.     Lowe's discharged the Plaintiff because of her pregnancy and disability.

75.     Lowe's discharge of the Plaintiff constituted discrimination against a QID on the basis of a disability.

72.     Lowe's knew, or should have known, of its obligations under the ADA and SCHAA and . South Carolina Pregnancy Accommodations Act.

76.     Lowe's knew, or should have known, that its actions violated the ADA,  SCHAA  and the SCPAA and still knowingly committed the violations.

77.     As a result of Lowe's knowing and willfully unlawful actions, the Plaintiff has suffered damages (including but not limited to physical and mental distress, loss of income and benefits, costs and attorney's fees and other actual and punitive damages).

78.     The Plaintiff seeks actual and punitive damages, costs and attorney's fees in such amounts as are just and proper as well as other relief available from this Court.

**FOR A SECOND CAUSE OF ACTION**
**VIOLATION OF THE FAMILY MEDICAL LEAVE ACT**
**Family and Medical Leave Act (FMLA)—29 U.S.C. §§ 2601–2654**

79.     Plaintiff realleges every allegation contained in the preceding paragraphs as if fully set forth herein.

80.     The Family and Medical Leave Act of 1993 was enacted to "balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity [by entitling] employees to take

reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a

child, spouse, or parent who has a serious health condition."

81.     An eligible employee may take up to twelve weeks unpaid leave in one year for a serious

health condition; the birth or adoption of a baby; or to care for a seriously ill child, parent, or

spouse.

82.     Employers may have more generous leave policies than these provided under the FMLA,

which Lowe's did, by providing paid bonding leave for both male and female qualifying

workers.

83.     Plaintiff, a qualified employee under the statute, requested FMLA leave for qualifying

personal conditions and for circumstances related to her pregnancy.

84.     The Plaintiff submitted information to the employer putting them on notice of her need to

take leave, her anticipated due dates, and changes to her anticipated leave dates as a result of

complications from COVID and their effect on her pregnancy.

85.     Rather than give Plaintiff her paid time off and benefits Defendant terminated Plaintiff.

86.     The Plaintiff's anticipated leave and request for leave was a motivating factor in the

Defendant's decision to discharge the Plaintiff.

87.     The Defendant Employer did intentionally, recklessly and negligently interfere with

and/or deny Plaintiff's FMLA.

88.     The Defendant employer knew and/or showed intentional and reckless disregard for the

Plaintiff and for their actions in denying Plaintiff's FMLA leave and benefits.

89.     Plaintiff has been severely prejudiced and lost her employment, wages and benefits as a

result of Defendants' violations of the Act.

90.    As a direct and proximate result of the Defendants' actions Plaintiff has suffered

damages.

91.    Plaintiff requests relief as set forth below.

**FOR A THIRD CAUSE OF ACTION**
**VIOLATION OF THE PREGNANCY DISCRIMINATION ACT and THE SOUTH**
**CAROLINA HUMAN AFFAIRS ACT**

92.    Plaintiff incorporates by reference all preceding paragraphs as if set forth verbatim

herein.

93.    The Pregnancy Discrimination Act specifies that Title VII's prohibition against sex

discrimination applies to discrimination "because of or on the basis of pregnancy, childbirth, or

related medical conditions." 42 U. S. C §2000e(k).

94.    Under federal law, employers must treat women affected by pregnancy the same, for all

employment-related purposes, as other persons not affected by pregnancy but similar in their

ability or inability to work.

95.     The Plaintiff was a member of a protected class: she is female, and she was pregnant at

all times relevant to the facts herein.

96.    Plaintiff met the employer's performance expectations.

97.    Plaintiff was subject to an adverse employment action (termination).

98.    The Plaintiff's pregnancy was the true reason for her termination.

99.     She was replaced by someone outside of her protected class.

100.    Defendants' discriminatory treatment of Plaintiff constitutes gender discrimination

motherhood discrimination, and pregnancy discrimination, disparate treatment based on

gender, and less favorable terms and conditions of employment for the plaintiff based

on gender, all in violation of Title VII and the South Carolina Human Affairs Law.

101.    As a result of Defendant's knowing and willfully unlawful actions, the Plaintiff has

suffered damages (including but not limited to physical and mental distress, loss of

income and benefits, costs and attorney fees and other actual and punitive damages).

**PRAYER FOR RELIEF**

WHEREFORE, having fully complained of Defendants, Plaintiff respectfully prays for

judgment in her favor, and against Defendants, on all causes of action; for an award of actual,

equitable, consequential, resulting, nominal, compensatory, and punitive damages in an amount

to be determined by the trier of fact; for an award of pre and post-judgment interest, attorneys'

fees and costs, and such other and further relief as the Court deems just and proper.

Respectfully submitted,

*s/Jennifer Munter Stark, Esq.*
Jennifer Munter Stark, Esq. FID 9364
Jennifer Munter Stark, Esquire, LLC
210 Wingo Way #300
Mt. Pleasant, SC 29464
(843) 972-0004, (843) 972-0006 (f)
jmunterstarklaw@gmail.com

*s/William B. Harvey III, Esq.*
William B. Harvey, III, Esq. FID #1762
Harvey and Batton
1001 Craven Street
Beaufort, SC 29902
(843) 524-3109, (843) 524-6973 (f)
bharvey@harveyandbattey.com
ATTORNEYS FOR PLAINTIFF

November 13, 2023
Mt. Pleasant SC